# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JUSTIN COLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:14-CV-03302-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Justin Cole's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had a variety of severe impairments, but retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work with non-exertional, postural, and mental limitations.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application on February 7, 2012, alleging a disability onset date of January 11, 2012. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on November 5, 2012,

issued a decision finding Plaintiff was not disabled. Plaintiff asked the Appeals Council to review the decision, and on March 15, 2013, it remanded Plaintiff's case back to the ALJ for further consideration. After a second hearing, the ALJ issued a new decision on March 19, 2014, again finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's second request for review on May 7, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ made four errors in determining his RFC: (1) the ALJ failed to base his credibility assessment on substantial evidence in the record; (2) the ALJ failed to properly evaluate the various medical opinions in the record; (3) the ALJ failed to adequately explain how he resolved discrepancies in the medical opinions he relied on in formulating Plaintiff's RFC; and (4) the ALJ failed to provide sufficient limitations on Plaintiff's ability to engage in appropriate social interactions in the workplace. These arguments are without merit.

**A.     The ALJ's credibility assessment is supported by substantial evidence.**

Plaintiff contends the ALJ discredited his testimony because he found that his daily activities were only mildly limited. Pl.'s Br. (Doc. 5) at 28. Plaintiff contends that, in fact, he was unable to engage in his daily activities without having to stop due to pain.

As the Court has observed many, many times before, credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

To begin, Plaintiff's explanation of why the ALJ discredited his testimony is misleading. The ALJ gave many other valid reasons for discounting Plaintiff's credibility in addition to his daily activities. For example, the ALJ found that Plaintiff exaggerated his back problems. In mid-July 2013, Plaintiff told his primary care physician, Dr. Thomas Davis III, M.D., that a

3

chiropractor told him he had "six herniated discs" in his back. But an magnetic resonance imaging ("MRI") scan of his lumbar spine showed no herniated discs or any other abnormalities, R. at 26, 851-52, and a September 2013 MRI scan of his cervical spine revealed only minimal early degenerative changes without stenosis, R. at 21, 799. Other tests and exams of his back showed only minor problems where the doctor recommended a muscle relaxant and physical therapy. R. at 21, 807, 899-903, 936. Additionally, the ALJ noted that despite his history of complaining about disabling pain from anal fissures and rectal problems, Plaintiff continued to serve in the military, work as a military contractor, and attend college through 2012. R. at 23, 340, 436-39. The ALJ also observed that although Plaintiff testified that he used the bathroom five to seven times per day and that these restroom trips would take 45 to 60 minutes at a time, he never reported such frequent and extensive restroom activity to his medical providers. R. at 22, 63-64. Further, no objective medical evidence supported Plaintiff's reports of such severe symptoms. R. at 22-23, 620, 645, 781.

The ALJ also found Plaintiff made inconsistent statements regarding his alcohol and drug use, and these inconsistencies damaged his credibility. R. at 25-26. During the July 2012 hearing, Plaintiff testified that he had stopped drinking in February 2012. R. at 82-83. But in April and May 2012, he told Veterans Administration ("VA") psychological counselors that he continued to drink heavily at least once a month. R. at 25, 669, 672, 701, 760. Similarly, during a Compensation and Pension Examination conducted on July 8, 2013, Plaintiff stated that he stopped drinking in 2006. R. at 25-26, 855, 861. But during a psychological evaluation conducted two months earlier, he reported that he started drinking again two to three years earlier, when he would go out with friends and consume six to eight drinks. R. at 26, 765. During the evaluation, Plaintiff also said that he had last used marijuana about four years ago, but then told a VA psychiatrist that he had last used marijuana in January 2012, about the time he

4

stopped working. R. at 26, 669, 764. And in September 2013, Plaintiff told a neurologist that his only illicit drug use had been "marijuana maybe 20 times in life." Yet in December 2011, he reported that his past use of illicit drugs had included use of marijuana, methamphetamine, cocaine, heroin, mushrooms, and LSD. R. at 26, 544-53, 812. Finally, the ALJ observed that Plaintiff may have been engaging in drug-seeking behavior, exaggerating his symptoms to continue receiving hydrocodone. R. at 26, 619, 719, 871-72, 881.

All of the above are all valid reasons to discount Plaintiff's credibility. *See Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011) (holding the ALJ properly discredited the claimant's credibility based in part on his inconsistent and conflicting statements regarding his back pain); *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("[T]he ALJ found Karlix unreliable because his testimony at the administrative hearing regarding his consumption of alcohol conflicted with medical documentation."); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (ALJ appropriately considered evidence concerning claimant's possible overuse of narcotic pain medications and observation that he appeared manipulative in his efforts to convince doctors of his pain: "A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations"). Because the ALJ gave good reasons for discounting Plaintiff's credibility, the Court must defer to the ALJ's credibility determination. *Gregg*, 354 F.3d at 713.

**B.     The ALJ did not err in evaluating the medical opinions in the record.**

Plaintiff also argues the ALJ erred in weighing the various medical opinions relating to his mental limitations. Pl.'s Br. at 18-27. Plaintiff contends that although the ALJ stated he gave "significant" or "substantial" weight to the opinions of Drs. David Lutz, Ph.D., Joan Bender, Ph.D., and Lester Bland, Psy.D., he nonetheless erred because he did not expressly incorporate

each and every one of their suggested mental limitations into his RFC determination. Specifically, Plaintiff complains that the ALJ did not place more limits on his ability to work with others, accept instructions, and respond appropriately to criticism from supervisors. Pl.'s Br. at 20. He also alleges the ALJ failed to properly analyze Dr. Mathew Masterson's, D.O., opinion that he was markedly limited in certain aspects of his mental functioning. Pl.'s Br. at 24-25.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ may give significant or substantial weight to a medical opinion but not embrace every recommendation encompassed in it. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (*quoting Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ( "[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").

The ALJ properly evaluated the opinions of Drs. Bland, Lutz, and Bender, and incorporated into Plaintiff's RFC those recommended limitations he found were supported by the record. To account for Plaintiff's difficulties in maintaining concentration, persistence, or pace, the ALJ restricted Plaintiff to simple, routine, and repetitive tasks in a work environment involving only simple, work-related decisions and routine workplace changes. R. at 20. To accommodate Plaintiff's difficulties in social functioning, the ALJ limited him to jobs requiring only occasional interaction with co-workers and supervisors, but no interaction with the general public. R. at 20. While the ALJ did not incorporate what could be interpreted as a suggestion from Dr. Bender that Plaintiff be limited to working alone, he explained why he did not. R. at 28.

These decisions are supported by the record. Dr. Bender specifically opined that Plaintiff could handle low levels of contact with coworkers and low or moderate contact with a supervisor. R. at 766. Dr. Lutz observed that Plaintiff seemed able to interact in most social situations, and Plaintiff told Dr. Lutz that he got along with a few coworkers and one supervisor who helped him at his last job. R. at 632. Dr. Bland also opined that Plaintiff was not significantly limited in his ability to get along with coworkers or peers, and only moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. R. at 28, 161-62.

Likewise, the ALJ did not err in giving little weight to Dr. Masterson's opinion that Plaintiff suffered marked limitations in certain aspects of mental functioning. The ALJ noted that this conclusion was inconsistent with Dr. Masterson's own clinical findings which included several mental status examinations during which he did not observe any significant limitations. R. at 27, 515-16, 562-63, 592-93. An ALJ may discount the opinion of a treating physician that is inconsistent with the physician's own notes. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). The ALJ also found that his opinion was inconsistent with Plaintiff's self-reported activities, which included preparing meals, playing with his children, playing video games, washing dishes, driving, and doing some household chores. R. at 27. An ALJ may discount a treating physician's opinion that is inconsistent with the plaintiff's reported daily activities. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014). Finally, the ALJ did not err in giving Dr. Masterson's opinion little weight because he rightly found that the record failed to show that Dr. Masterson believed these limitations would last longer than three months, thus his opinion—even if fully credited—was of limited value. R. at 27, 509-10; *see* 42 U.S.C. § 423(d)(1)(A).

**C. The ALJ adequately explained how he resolved discrepancies between the different medical opinions he relied on in formulating Plaintiff's RFC.**

Next, Plaintiff repeatedly makes a conclusory allegation that the ALJ failed to adequately explain how he resolved the discrepancies between the opinions he relied on in formulating Plaintiff's RFC. Pl.'s Br. at 19-20, 23-24, 27. This argument is meritless.

The ALJ spent ten pages of his nineteen page decision analyzing the medical evidence and formulating Plaintiff's RFC. R. at 20-30. Four pages were devoted to analyzing and discussing the different medical opinions in the record. R. at 26-30. The discussion thoroughly covered Plaintiff's RFC and was more than sufficient. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation.").

**D. The ALJ did not err in limiting Plaintiff to occasional interactions with co-workers and supervisors, and no interactions with the public.**

As part of the RFC determination, the ALJ found Plaintiff should be limited to occasional interactions with co-workers and supervisors, and no interactions with the public. Plaintiff contends the ALJ erred by not recognizing greater limitations on Plaintiff's ability to engage in appropriate social interactions in the workplace. Pl.'s Br. at 19.

A claimant's RFC is based on the combined effects of all of his *credible* limitations. 20 C.F.R. § 416.945. In determining a claimant's RFC, the ALJ may consider a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and attempts to work. SSR 96-8p.

8
Case 6:14-cv-03302-DGK   Document 13   Filed 09/10/15   Page 8 of 9

As discussed above, the record supports the ALJ's finding on this issue.  Dr. Bender opined that Plaintiff could handle low levels of contact with coworkers and low or moderate contact with a supervisor,  R. at 766; Dr. Lutz observed that Plaintiff seemed able to interact in most social situations, R. at 632; and Dr. Bland opined that Plaintiff was not significantly limited in his ability to get along with coworkers or peers, and only moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, R. at 161-62.  Thus, the Commissioner's findings are supported by substantial evidence on the record as a whole and there is no error here.  *Buckner,* 646 F.3d at 556.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 10, 2015              /s/ Greg Kays
                                       GREG KAYS, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT